IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HESS CORPORATION | § § § | |
| *Plaintiff*, | § § § | |
| | § | Case No._____ |
| v. | § § | |
| SCHLUMBERGER TECHNOLOGY CORPORATION | § § § § | |
| *Defendants*. | § § | |

# PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Hess Corporation ("Hess")—on behalf of itself and all relevant subsidiaries and as operator on behalf of its non-operating working interest owner, Chevron U.S.A. Inc.—through undersigned counsel, complains of defendant Schlumberger Technology Corp. ("Schlumberger") and in support would respectfully show the Court as follows:

## I. Nature of Case

1. Hess brings this action to recover significant damages incurred as a result of non-conforming safety valves Schlumberger manufactured and sold to Hess. From 2013 to 2015, Hess purchased five of Schlumberger's Surface Controlled Subsurface Safety Valves ("Schlumberger Safety Valves") for its wells in Mississippi Canyon on the Outer Continental Shelf of the Gulf of Mexico ("Tubular Bells Field"). Those valves were installed thousands of feet below the ocean floor as a process safety contingency to isolate the well in the event of an emergency. To date, three of the Schlumberger Safety Valves have failed. This resulted in significant production loss, additional costs associated with retrieval and replacement of the

failed valves and restoration of the wells, related property loss and damage, and further costs and deferred production associated with schedule delays on subsequent producer and injector wells.

2. Schlumberger investigated the first two failed valves. Schlumberger conceded that the valve failure was caused by non-conforming Metal Spring Energized ("MSE") seals in the valve and that Hess could not have known about the issue.

## II. Parties

3. Plaintiff Hess is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York.

4. Defendant Schlumberger is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Texas. At all relevant times, Schlumberger was the manufacturer of the Schlumberger Safety Valves. Schlumberger may be served through its registered agent for service of process: Capitol Corporate Services, Inc., 206 E. 9th Street, Suite 1300, Austin, Texas, 78701.

## III. Jurisdiction and Venue

5. This Court has jurisdiction over the subject matter of this case because the amount in controversy exceeds $75,000 exclusive of interest and costs, and there is complete diversity of citizenship between the plaintiff and defendant. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and supplemental jurisdiction as to any state law claims.

6. Pursuant to 28 U.S.C. § 1391, venue properly lies in this district as it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and because the defendant is subject to personal jurisdiction in this judicial district. Defendant Hess is doing business in Texas and has continuing minimum contacts with the State of Texas. The Defendant is amenable to service of process by a Texas court.

## IV. Factual Allegations

A.  Underlying Contractual Agreements

7. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth here and further alleges as follows:

8. On February 2, 2000, Hess and Schlumberger entered into Master Service Contract No. 7525, which expressly covered all "services, products, equipment, materials or other items desired…" provided by Schlumberger to Hess and defined the rights, remedies, and liabilities of both parties.

9. On January 3, 2003, Schlumberger wrote to Hess requesting an addendum that "states that neither party will be responsible for the indirect or consequential damages of the other."

10. On March 25, 2003, Hess rejected Schlumberger's request to amend Master Service Contract No. 7525 to waive indirect and consequential damages.

11. Hess and Schlumberger continued to engage in commercial activities for over 13 years with full knowledge that Master Service Contract No. 7525 had no waiver of indirect or consequential damages. Schlumberger never refused to accept further work subject to Master Service Contract No. 7525.

B.  The Tubular Bells Field on the Outer Continental Shelf

12. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth here and further alleges as follows:

13. The wells at issue are located in the Tubular Bells Field. The Tubular Bells Field is located approximately 135 miles southeast of New Orleans on the Outer Continental Shelf. Hess is the Operator of the Tubular Bells Field, and Chevron is a non-operating working interest

3
4614774v1/015174

owner. The subsea wells are connected to a production facility called Gulfstar One. The completed wells are named A, B, C, D and E. Well A was completed first, followed by Wells D, B, C, and finally Well E. Well H is scheduled for completion in the fourth quarter of 2016.

14. The wells have been drilled in approximately 4,300 feet of water. The wells themselves are deviated with an approximate total measured depth of 25,000 feet.

15. Well A produces approximately 2,000 barrels of oil per day. Well B was producing approximately 15,000 barrels of oil per day until it was shut-in by the non-commanded valve closure. Well C produced approximately 9,000 barrels of oil per day prior to the valve failure. Well D produced approximately 16,500 barrels of oil per day prior to the valve failure.

C. Acquiring the Schlumberger Safety Valves

16. In 2011, Hess began preparing a bid package for subsurface safety valves for the wells it anticipated drilling in the Tubular Bells Field. The bid package is a statement of Hess' requirements for the safety valves, including required technical specifications such as tensile strengths, pressure requirements, temperature requirements, and the type of control system. Hess employees in Houston worked for several months putting together the bid package. Hess sent the bid package to Schlumberger and Baker Hughes in December 2011.

17. Schlumberger and Baker Hughes both responded with recommendations for safety valves. Schlumberger responded in February 2012. In evaluating the bids from Schlumberger and Baker Hughes, Hess looked at the run history, the technical specifications, competency of the supplier's personnel, the delivery schedule, and cost. Generally, Hess uses a two-step process in evaluating bids. First, the completion engineering team evaluates the technical specifications. Then the global supply chain group looks at the cost. Before Hess

awards a bid, a Requirement for Equipment and Materials (REM) document is produced internally as a final check to ensure the product meets Hess' needs. Once a REM is completed, Hess awards the contract and sends out a purchase order.

18. Hess chose to order five of the Schlumberger Safety Valves for approximately $572,000 per valve. Hess handled all contract negotiations from Houston.

19. Hess chose the Schlumberger Safety Valves for two primary reasons. First, the track record of the Schlumberger valve (at the time) was deemed more extensive to that of the Baker Hughes valve. Schlumberger had installed many more of its valves as compared to Baker Hughes. Second, the Schlumberger valve was deemed more cost effective. The Schlumberger valve ranked higher through Hess' techno-economic evaluation process and the contract was subsequently awarded to Schlumberger.

20. Schlumberger manufactured the safety valves in this judicial district.

21. When Schlumberger completed building and performing factory acceptance testing on a valve, it sent Hess a "field ticket" indicating that a valve under the purchase order had been completed. Following Hess' acknowledgment of each field ticket, Schlumberger sent an invoice to Hess' global supply chain group in order to receive payment for each valve.

22. When it sent each field ticket, Schlumberger shipped the respective valve to its storage facility in Houma, Louisiana. Although Schlumberger stored the valves in Houma on behalf of Hess, the risk of loss expressly passed from Schlumberger to Hess on the date indicated on the applicable field ticket. At that point, Schlumberger had completed its work under the contract to manufacture and supply a safety valve for Hess.

23. When needed, each valve was transported to the Stena Forth, the drill ship used for drilling and completing the wells in the Tubular Bells Field.

5

24. The Schlumberger Safety Valve for Well D, valve number H13S-0010, was installed in April 2014, at a depth of approximately 4,000 feet below the mudline.

25. The Schlumberger Safety Valve for Well B, valve number H13S-0011, was installed in May 2014.

26. The Schlumberger Safety Valve for Well C, valve number H13S-0022, was installed in April 2015.

D. <u>Schlumberger Safety Valve Failures</u>

27. Production on Well D began on January 14, 2015 and ceased due to valve failure on August 10, 2015.

28. Production on Well B began on December 14, 2014 and ceased due to valve failure on January 29, 2016. Production resumed post-workover on May 1, 2016.

29. Production on Well C began on July 21, 2015 and ceased due to valve failure on July 28, 2016. Well C is currently scheduled for workover in November 2016 to resume production in January 2017.

30. Post failure of each of the valves, Hess called in Schlumberger to conduct troubleshooting. Schlumberger's efforts did not mitigate the failure, restore the well, or resume production. It was concluded that an intervention was the only viable means to restore the wells and resume production.

31. During the entire period the valves were in use, they were exposed to normal operating conditions that were consistent with the specifications Hess provided to Schlumberger through the bidding process for the valve design.

4614774v1/015174

E. Restoring the Wells

32. As a result of the valve failures, Hess incurred damages, including without limitation, costs and expenses to restore the wells, and replace the failed valves.

33. In February 2016, Hess undertook work to restore and to install a replacement Schlumberger safety valve in Well D with the seal stack components qualified and verified as per design. Production resumed thereafter. This process took approximately 64 days and cost approximately $60 million, exclusive of lost profits due to deferred production.

34. In April 2016, Well B was restored and the valve was replaced with a Schlumberger Safety Valve containing components qualified and verified as per design. Production resumed thereafter. This process took approximately 61 days and cost approximately $55 million, exclusive of lost profits connected to deferred production.

35. Well C is scheduled to be restored and the Well C valve is scheduled to be replaced after the drill ship completes Well H. Well H, however, is also behind schedule due to the required interventions on Wells B and D.

F. The Schlumberger Investigation

36. It now appears that, by at least January 2016, Schlumberger was aware of issues with respect to the safety valve seal. On January 18, 2016, Schlumberger told Hess that it had identified an issue with the seals and had engaged in a worldwide recall of all valves in inventory manufactured from 2012 to 2015.

37. The investigation continued. After the Schlumberger Safety Valve was removed from Well D, it was shipped back to Schlumberger's Completions Houston Project Center for a root cause analysis. A Hess contract expert was present for some of the tear-down of the Schlumberger valve.

7

38. Based on the root-cause analysis it conducted, Schlumberger concluded and told Hess that the primary root cause of the valve failure is the quality of the MSE seal. The MSE seals identified in the investigation were part of suspect batches that decreased reliability.

39. Schlumberger's engineers also told Hess that the issues with respect to the MSE seals may have been exacerbated by Schlumberger's own Factory Acceptance Testing before delivering the valves to Hess. During the Factory Acceptance Testing, the engineers "pressure up" the valves and then bleed off the pressure. Schlumberger engineers told Hess that during the bleed off some of the seals had leaks and the bleed off caused the seals to move irregularly, damaging them. Schlumberger engineers said that the high-pressure bleed off during the Factory Acceptance Test either fully damaged the seals or at least compromised them.

40. Schlumberger communicated to Hess that destructive testing confirmed that the MSE seals in the Well B valve suffered from the same issue as those in the Well D valve.

41. On May 17, 2016, Hess notified Schlumberger that it revoked acceptance of the Schlumberger Safety Valves used in Wells D and B. Once Schlumberger became aware of Hess' intention to pursue recovery of its damages, Schlumberger withdrew the final version of its report and began referring to it as a mere draft. Hess revoked acceptance of the Schlumberger Safety Valve used in Well C on July 29, 2016.

G. Schlumberger's Non-Delivery of the Well H Valve

42. In June 2016, Schlumberger told Hess that Schlumberger had shut down the review process related to a valve for Well H, despite Schlumberger and Hess previously entering into a contract for Schlumberger to deliver the valve to Hess.

43. On July 29, 2016, Amerino Gatti of Schlumberger notified Brian Truelove of Hess that Schlumberger was suspending all sales of valves to Hess for the Tubular Bells and

Stampede Fields. This included the valves (primary and backup) for Well H that Schlumberger had already agreed to manufacture for Hess. Although Hess had complied with all Schlumberger requests for data in connection with Well D during Schlumberger's Root Cause Analysis process, Mr. Gatti stated that Schlumberger might lift the suspension if Hess provided certain data related to Wells B and D.

44. On August 19, Mr. Gatti sent another letter to Brian Truelove about the valve for Well H, which Hess was then drilling. This time, Mr. Gatti stated that Schlumberger would release the valve for Well H immediately if Hess agreed that Master Services Contract No. 7525—under which the Schlumberger Safety Valves for Wells B, C, and D were purchased—excluded damages for "lost profits, remediation work, attorneys' fees and consequential damages." Mr. Gatti did not mention Schlumberger's need for data in this letter.

45. On August 22, Hess responded to Mr. Gatti, explaining that Schlumberger was contractually obligated to release the Well H valve and that Hess would not waive its damages related to the B, C, and D valves. Four days later, Schlumberger reiterated its position that it would not provide Hess with a valve for Well H.

## V. Cause of Action

<u>Breach of Contract Pursuant to Section 2.608 of the Texas Business and Commerce Code.</u>

46. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth here and further alleges as follows:

47. Hess was not aware of the issues with respect to the MSE seals contained in the Schlumberger Safety Valves at the time Hess accepted the goods.

48. Hess could not have become aware of the issues with respect to the MSE seals in the Schlumberger Safety Valves at the time Hess accepted the goods without conducting destructive testing on the valves.

49. The Schlumberger Safety Valves containing the MSE seals were non-conforming goods.

50. The non-conformities substantially impaired the value of the valves to Hess.

51. Hess sent Schlumberger a notice of revocation for Wells B and D on May 17, 2016.

52. Hess sent Schlumberger a notice of revocation for Well C on July 29, 2016.

53. Hess revoked acceptance of the valves within a reasonable time.

## VI. Prayer for Relief

Hess respectfully requests that this Court enter judgment in favor of Hess against Schlumberger and award Hess the cost of cover for each valve, incidental damages, consequential damages, attorney's fees and expenses, costs of suit, pre- and post-judgment interest at the maximum legal rate, and all such other and further relief, equitable and legal, to which Hess justly is entitled.

Respectfully submitted,

SUSMAN GODFREY L.L.P.

By: _____*/s/ Thomas W. Paterson*_____
    Thomas W. Paterson
    State Bar No. 15571500
    Rocco Magni
    State Bar No. 24092745
    1000 Louisiana Street, Suite 5100
    Houston, Texas 77002-5096
    Telephone: (713) 651-9366
    Fax: (713) 654-6666
    tpaterson@susmangodfrey.com
    rmagni@susmangodfrey.com

*Attorneys for Plaintiff*