IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HESS CORPORATION, §
 §
 Plaintiff, §
 §
v. § CIVIL ACTION NO. H-16-3415
 §
SCHLUMBERGER TECHNOLOGY §
CORPORATION, §
 §
 Defendant. §

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant's Motion to Dismiss Second Amended Complaint Under Rule 12(b)(6) ("Defendant's Motion to Dismiss") (Docket Entry No. 29). For the reasons stated below, the motion will be granted in part and denied in part.

**I. Factual and Procedural Background**

This case arises from the sale and subsequent failure of several Subsurface Safety Valves ("SSVs") purchased by Hess Corporation ("Hess") from Schlumberger Technology Corporation ("Schlumberger").[1] Hess and Schlumberger set out the terms of the agreement in Commercial Agreement Number 46000010410 (the "Commercial Agreement").[2] Exhibit J to the Commercial Agreement

---

[1]The following facts are presented as alleged in Plaintiff's Second Amended Complaint (Docket Entry No. 25).

[2]Exhibit 1 - Tab 1 to Plaintiff's Second Amended Complaint, Docket Entry No. 25-1.

sets out the quality standards agreed upon by the parties.[3] Section 2.10 of the exhibit, titled "Engineering, Design Reviews & Safety Critical Equipment," states: "Contractor equipment shall comply with the latest editions of applicable standards and specifications, e.g., — API, ASME, ANSI, ASTM, ASNT, ISO, etc., as required by local/federal regulations, specified by the Company or identified within the Contract."[4]

The Commercial Agreement, along with other documents concerning the terms of the purchase, was subject to Master Service Contract No. 7525 (the "MSC"), entered into by the parties in February of 2000.[5] The MSC states that it "shall control and govern all work performed by [Schlumberger] for [Hess], and shall be deemed to be incorporated in full in every subsequent oral and/or written work or purchase order, service agreements or other project documents."[6] The MSC also states that "[u]pon [Hess] notifying [Schlumberger] of the services, products, equipment, materials or other items desired, [Schlumberger] will commence furnishing same . . . in strict conformity with the specifications and requirements contained herein and in any applicable work order, purchase order,

---

[3]Id. at 72-81.

[4]Id. at 76-77.

[5]Exhibit 1 - Tab 3 to Plaintiff's Second Amended Complaint, Docket Entry No. 25-3.

[6]See id. at 3, § 1.

service agreement or other project document."[7]  The MSC also contains the following express warranty:

> [Schlumberger] warrants that all equipment, products, materials and other items furnished hereunder shall: (1) be new if specified by [Hess]; (2) be free from defects in design, materials, fabrication and other workmanship; and (3) conform to AHC's specifications, drawings or other descriptions contained in the applicable service agreement, purchase order, work order or other project document.  [Schlumberger] warrants that all work and other services performed hereunder (whether by [Schlumberger], its subcontractors or other parties for whom it is responsible) shall be free from all faults and defects and of a quality consistent with the prevailing standards of workmanship for experienced contractors with expertise in the particular type of work or service being performed.[8]

The MSC limits Schlumberger's warranties to "a period of one (1) year after [Schlumberger's] delivery and/or installation . . . ."[9] The MSC expressly and conspicuously disclaims all other express or implied warranties:

> [SCHLUMBERGER] MAKES NO OTHER WARRANTY AS TO PRODUCTS, WORKMANSHIP OR MERCHANTABILITY, WHETHER EXPRESSED OR IMPLIED (INCLUDING, WITHOUT LIMITATION, THAT THE PRODUCTS OR SERVICES SHALL BE FIT FOR ANY PARTICULAR PURPOSE), EXCEPT AS EXPRESSLY STATED HEREIN OR IN AN EXPRESS AMENDMENT HERETO.[10]

The SSVs at issue were purchased for wells in the Tubular Bells Field, located 135 miles southeast of New Orleans on the

---

[7] Id. at 3, § 2(a).

[8] Id.

[9] Id. at 4, § 2(a).

[10] Id.

Outer Continental Shelf.[11] Hess is the operator of the Tubular Bells Field. The SSVs for Wells D, B, and C were installed in April 2014, June 2014, and April 2015, respectively.[12] Production on Well D began on January 14, 2015, and ceased due to valve failure on August 10, 2015.[13] Production on Well B began on December 14, 2014, and ceased due to valve failure on January 29, 2016.[14] Production on Well C began on July 21, 2015, and ceased due to valve failure on July 28, 2016.[15]

Hess reported each well failure to Schlumberger. Schlumberger investigated the failures and concluded that the primary cause of the valve failures was the quality of the Metal Spring Energized ("MSE") seals. On April 29, 2016, Schlumberger issued a report stating that it had identified an issue with the seals and had engaged in a worldwide recall of all SSVs in inventory manufactured from 2012 to 2015.[16] The MSE seals identified in the investigation were part of the suspect batches. Schlumberger's engineers also informed Hess that the issues with the MSE seals may have been

---

[11]Plaintiff's Second Amended Complaint, Docket Entry No. 25, p. 12 ¶ 27.

[12]Id. at 15, ¶¶ 41-43.

[13]Id. ¶ 44.

[14]Id. ¶ 45.

[15]Id. at 16, ¶ 46.

[16]Schlumberger Field Return Analysis Report Rev. 7, dated April 29, 2016, Exhibit 3 to Plaintiff's Second Amended Complaint, Docket Entry No. 25-10, p. 30.

exacerbated by Schlumberger's own Factory Acceptance Testing, during which high-pressure bleed off may have damaged or at least compromised the seals.[17] Schlumberger informed Hess that destructive testing confirmed that the MSE seals in the Well B valve suffered from the same issue as those in the Well D valve.

On May 17, 2016, Hess notified Schlumberger that it revoked acceptance of the Schlumberger Safety Valves used in Wells D and B pursuant to § 2.608 of the Texas Business & Commerce Code.[18] Hess revoked acceptance of the SSV used in Well C on July 29, 2016, on the same basis.[19] Hess now seeks to recover damages for breach of contract.

Schlumberger moved to dismiss Hess's Original Complaint on the basis that the SSVs complied with Schlumberger's time-limited warranties. Because the court could not determine the viability of Hess's claims from its Original Complaint, the court allowed Hess to amend in order to clarify its allegations. Hess was instructed to identify specific contractual obligations with which the valves failed to conform. The court also directed the parties to articulate a test for distinguishing between claims that sound in contract and warranty claims to assist the court in analyzing

---

[17]Plaintiff's Second Amended Complaint, Docket Entry No. 25, p. 20 ¶ 60.

[18]Id. at 26, ¶ 77.

[19]Id. ¶ 78.

Schlumberger's argument that its disclaimer precluded Hess's warranty claims.

Hess now alleges that the SSVs containing the defective MSE seals were non-conforming goods and that the non-conformities substantially impaired the value of the SSVs to Hess. Hess lists several ways in which SSVs were non-conforming, but each of Hess's allegations falls into one of two categories: (1) the SSVs were not designed, manufactured, or tested according to the relevant contractually agreed standards (e.g., American Petroleum Institute (API), International Organization for Standardization (ISO), etc.), or (2) the SSVs failed to perform as specified (e.g., non-commanded closures and a completion life span of less than 10-years).[20] Hess seeks to recover for breach of contract pursuant to § 2.711 of the Texas Business and Commerce Code. Schlumberger moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), citing its disclaimer and the fact that each of the installed SSVs functioned for a period of at least one year.

---

[20]Hess asserts a separate breach-of-contract claim that makes no reference to Chapter 2 of the Texas Business and Commerce Code. Hess alleges that "Schlumberger breached its contract obligations with respect to the manufacture and inspection of the Schlumberger Safety Valves that Schlumberger delivered to Hess that failed." Plaintiff's Second Amended Complaint, Docket Entry No. 25, p. 30 ¶ 100. The alleged result of Schlumberger's breach was that "Schlumberger delivered Schlumberger Safety Valves to Hess that were unable to function under the required contractual conditions and according to the required contractual configurations." Id. at 31, ¶ 102. Because the substance of this claim is the same as the first — i.e., that Schlumberger breached its contract by delivering non-conforming goods — the court concludes that the claims are indistinguishable and that Chapter 2 of the Texas Business and Commerce Code provides the applicable law.

## II. Legal Standard

### A. Rule 12(b)(6)

In a motion to dismiss under Rule 12(b)(6), the court must "'accep[t] all well-pleaded facts as true and vie[w] those facts in the light most favorable to the plaintiff.'" Bowlby v. City of Aberdeen, Mississippi, 681 F.3d 215, 219 (5th Cir. 2012). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Id. at 1965. Dismissal under Rule 12(b)(6) is appropriate when a plain-tiff's legal theory is incorrect: "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate . . . ." Neitzke v. Williams, 109 S. Ct. 1827, 1833 (1989). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 127 S. Ct. at 1966 (internal quotation marks omitted).

B.  **Texas Business and Commerce Code § 2.608**

Section 2.608 of the Texas Business and Commerce Code, entitled "Revocation of Acceptance in Whole or in Part" states:

> (a) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
>
>> (1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
>>
>> (2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
> (b) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
>
> (c) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Whether a buyer properly revoked acceptance is a fact issue. Vemex Trading Corp. v. Technology Ventures, Inc., 563 F. App'x 318, 325 (5th Cir. 2014) (citing Neily v. Arron, 724 S.W.2d 908, 913 (Tex. App. — Fort Worth 1987, no writ)). The elements of revocation are:

> (1) initial acceptance (with a reasonable assumption that the non-conforming item would be cured and it is not cured, or without discovery of the non-conforming item if acceptance was induced by difficulty of discovery or by seller's assurance); (2) of non-conforming item; (3) such non-conformity substantially impairs the value to the buyer; (4) and revocation occurs within a reasonable time; (5) in any event, the revocation must occur before

-8-

a substantial change in the condition of the goods occurs
             (which change is not caused by defect of the goods). The
             determination of each of these elements is a question of
             fact.

Neily, 724 S.W.2d at 913-14 (citing Vista Chevrolet v. Lewis, 704 S.W.2d 363, 368 (Tex. App. — Corpus Christi 1985), rev'd on other grounds, 709 S.W.2d 176 (Tex. 1986)). The only element disputed at this stage of the proceedings is non-conformity. The court concludes that Hess has alleged facts that plausibly support each of the remaining elements and will therefore limit its analysis to the disputed element.

### III. Application

Whether Hess's allegations raise an actionable claim depends on whether the facts as alleged would permit Hess to revoke acceptance of the SSVs after the contractual warranty period had expired. Hess alleges that it properly revoked its acceptance of the Schlumberger valves because Schlumberger breached its contract by delivering non-conforming goods. Schlumberger argues that the goods conformed to the terms of the contract and that the disclaimer in the Master Service Contract precludes Hess's claims, which Schlumberger argues are disguised warranty claims. Despite having extensively researched and briefed the issue, the parties have provided no binding precedent that squarely addresses the issue before the court.

Hess's Second Amended Complaint and its Opposition to Defendant's Motion to Dismiss Second Amended Complaint Under

Rule 12(b)(6) ("Plaintiff's Opposition")[21] focus on the language of § 2.608. Hess argues that whether the buyer has finally accepted the goods is the "critical factor" in determining what remedies are available to the buyer.[22] The Structural Metals case provides the closest support for Hess's argument.

In the context of revocation, the court in Structural Metals distinguished when a plaintiff may assert a breach of contract claim and when the plaintiff is limited to warranty claims based on the delivery of non-conforming goods. 2012 WL 5208543 at *7. The plaintiff in Structural Metals initially brought contract and warranty claims based upon the defendant's alleged failure to provide engineering and manufacturing services needed for an electrical system purchased from the defendant. Id. at *1-2. In an earlier order the court had granted summary judgment for the defendant on the plaintiff's breach of contract claim. Id. at *3. The court had relied on a case holding that "[o]nce a buyer has accepted the goods and can no longer revoke that acceptance, it is limited to recovering under section 2.714 of the UCC for breach of warranty if the goods are defective or nonperforming." Id. (citing Bro-Tech Corp. v. Purity Water of San Antonio, 681 F. Supp. 2d 791, 796 n.4 (W.D. Tex. 2010). "In deciding the motion for summary

---

[21]Docket Entry No. 34.

[22]Id. at 15 (citing Structural Metals, Inc. v. S & C Electric Co., 2012 WL 5208543 at *7, Civil Action No. SA-09-CV-984-XR (W.D. Tex. 2012)).

judgment, the Court's primary focus was on the fact that SMI was complaining about defects in the goods as opposed to non-delivery or a failure to perform." Id. at *6.

On reconsideration the court held that "[a]lthough a failure to deliver or perform gives rise to a breach-of-contract claim, whether delivery of non-conforming goods or performance gives rise to breach-of-warranty or breach-of-contract remedies depends on whether the buyer has accepted the goods despite the nonconformity." Id. at *5 (citing Contractor's Source, Inc. v. Hanes Companies, Inc., Civ. A. No. 09-CV-0069, 2009 WL 6443116 (S.D. Tex. Dec. 29, 2009) and noting that the case law "is murkier, and somewhat contradictory" in the case of delivery of non-conforming goods). "[T]he critical factor in determining the remedies available to the buyer is whether the buyer has finally accepted the goods, not whether the buyer is complaining about defects or non-conformities." Id. at *7 (citing Selectouch Corp. v. Perfect Starch, Inc., 111 S.W.3d 830, 834 (Tex. App. — Dallas 2003, no pet.). The holding in Structural Metals thus supports the position that a latent defect at the time of the delivery may be grounds for later revocation if the buyer has not finally accepted the goods with knowledge of the defect.

Schlumberger extrapolates a different rule from the case law: "When a seller delivers nothing or delivers different goods than the goods ordered, the seller has failed to comply with a contract term. When a seller delivers an inferior or defective version of

-11-

the goods ordered, the seller has failed to comply with a warranty."[23] In support of its rule, Schlumberger cites a number of cases that at least tangentially address the issue before the court, but the different contexts and claims in those cases limit their usefulness. The court does not cite them here to avoid further muddying an already murky area of law.[24]

Schlumberger's position is best illustrated by a Fifth Circuit case distinguishing contract claims from warranty claims. In Reynolds Metals Co. v. Westinghouse Electric Corp., 758 F.2d 1073 (5th Cir. 1985), a manufacturer sold electrical equipment and included in the bargain a "competent" engineer who was to supervise installation of the equipment. Id. at 1074. During final inspection and startup of the equipment the manufacturer sent an engineer who lacked extensive experience with the type of equipment being installed and who understood his role to be providing technical assistance rather than supervising. Id. at 1075. A detection system designed to warn of internal problems in the equipment was improperly installed, and the equipment, which had an expected

---

[23]Defendant's Motion to Dismiss, Docket Entry No. 29, p. 24. Schlumberger acknowledges that the difference between "different" and "defective" goods is case-specific and can be difficult to determine. Id. at 15. Assuming Schlumberger's distinction is relevant, such a determination would best be made after a full presentation of the facts at trial. Indeed, none of Schlumberger's cited cases resulted in dismissal on the pleadings. The court is skeptical that these issues can be resolved on summary judgment.

[24]The court nevertheless assures the parties that it has read and analyzed each case.

life-span of twenty to thirty years, failed less than a year after being put into service. Id. The buyer submitted a warranty claim. Id. The manufacturer denied the claim on the ground that its warranty had expired. Id. at 1076.

The buyer sued, asserting both warranty and contract claims.[25] Id. At the close of the evidence the district court granted an instructed verdict that eliminated the buyer's warranty claims. Id. at 1076-77. But the court concluded that the manufacturer's warranty disclaimers did not necessarily bar a breach of contract claim based on the manufacturer's failure to provide a competent engineer to supervise installation. Id. at 1077. The jury found in favor of the buyer on its contract claim. Id. The manufacturer appealed. Id. The Fifth Circuit affirmed the viability of the contract claim, reasoning:

> If [the manufacturer] had provided a competent engineer to supervise installation of the transformer, and that engineer had not performed as expected, there would be a breach of warranty but not a total failure of performance. In contrast, if [the engineer] did not even qualify as a "competent" engineer and did not believe that it was his duty "to supervise" [the buyer] in the installation, then by supplying him [the manufacturer] failed to perform at all as promised under the contract.

Id. at 1078.

Both of the parties' proposed rules are correct -- as far as they go -- and are compatible. Hess is correct in pointing out

---

[25]The buyer also alleged causes of action in negligence and strict liability, but those claims were barred by applicable statutes of limitation.

that § 2.608 does not distinguish between non-conformity with warranty terms and other contractual obligations. And Schlumberger correctly argues that failure to perform sounds in contract whereas defective performance sounds in warranty. The court concludes that the parties' actual disagreement lies in whether the SSVs conformed to the terms of the contract at the time of delivery. Schlumberger argues that the SSVs were conforming, as evidenced by the fact that each functioned throughout the warranty period. Hess contends that Schlumberger's failure to perform its contractual obligations when manufacturing the SSVs rendered them non-conforming upon delivery and that § 2.608 permits Hess to revoke acceptance when it discovered the non-conformity, regardless of whether the non-conformity involved a warranty or other contractual term. The question before the court on a motion to dismiss is whether Hess has plausibly alleged that Schlumberger's SSVs were non-conforming at the time of delivery. Because Hess alleges that Schlumberger did not fulfill its contractual obligations when manufacturing the SSVs, and because Hess alleges that Schlumberger's failure resulted in delivery of the allegedly defective non-conforming MSE seal that was present at the time of delivery, the court concludes that Hess's claim is plausible.

Schlumberger's proposed rule provides the second basis for Hess's breach-of-contract claim, as illustrated by applying the reasoning in <u>Reynolds</u> to this case. Schlumberger argues that Hess bargained for 5½" valves and that Hess received 5½" valves. Hess

alleges that it contracted not only for SSVs of a certain size but for SSVs that complied with API 14A industry standards. Among these standards is the requirement that "SSSV equipment," such as the equipment Hess ordered, "shall be manufactured to drawings and specifications that are substantially the same as those of the size, type, and model SSSV equipment that has passed the validation test."[26] Hess alleges that the SSVs were manufactured using a different spring than the one used in the design that had passed the API validation test. Hess does not allege that the spring was defective or inferior but different (i.e., non-conforming). Hess bargained for a part designed and tested under API standards. Hess alleges that the components of the part it received had not been so tested. Accepting Hess's allegations as true for the purposes of a motion to dismiss and viewing them in the light most favorable to Hess, Hess's claim sounds in contract.

The court's reasoning can be illustrated by substituting "SSVs" for "engineer" and "API-compliant" for "competent." If Schlumberger had provided API-compliant SSVs and those valves had not performed as expected, Schlumberger might have breached a warranty but not totally failed to perform. In contrast, if the SSVs were not the API-compliant SSVs Hess contracted for, then Schlumberger failed to perform as promised under the contract. The

---

[26]API Specification 14A § 6.3.2.2, Exhibit 1 - Tab 5 to Plaintiff's Second Amended Complaint, Docket Entry No. 25-5, p. 11 (page number at bottom of document).

court concludes that, insofar as Hess's claims concern contractually agreed-upon features of the goods, they sound in contract.

Some of Hess's alleged non-conformities do not, however, support its breach-of-contract claim under either of the rationales explained above. Hess seeks to revoke acceptance of the SSVs because they did not maintain the ability to remain in the open position and did not have a 10-year functional life span. These allegations involve the failure of the SSVs to perform as expected, not a latent defect present at the time of delivery. Schlumberger correctly argues that allowing revocations on the basis of the failure of goods to perform after the expiration of their warranty period would make time-limited warranties meaningless. Hess alleges that it contracted for SSVs that would have the ability to be held open in the open position, but, as the disclaimers in the MSC make clear, Schlumberger did not warrant that the valves would do so indefinitely. Schlumberger explicitly warranted performance of the parts for one year only.

Schlumberger's contractual obligation to deliver API-compliant parts, on the other hand, is not time-limited. Either the SSVs were API-compliant on delivery or they were not compliant. That is a fact issue. Schlumberger argues that Hess is an "extremely sophisticated" party, that Hess bargained for a one-year warranty, and that the parts performed for one year. But that argument cuts both ways. Hess also bargained for specific parts that had been

designed and tested to rigorous standards. If the valves or their components did not meet those standards, then Schlumberger did not provide what Hess bargained for. Hess cannot have knowingly assumed the risk if it could not have known the SSVs were non-conforming at the time of delivery.

## IV. Conclusions and Order

For the reasons stated above, the court concludes that Hess has pled sufficient facts to support a viable revocation claim. Schlumberger's argument is, in essence, that the SSVs were conforming. But that is for the trier of fact to determine. Hess may proceed with its claims based on the alleged non-conformity of the SSVs at the time of delivery. Hess may not proceed with its claims based on the failure of the SSVs to function after the warranty period had expired. The court has not attempted to apply this distinction to each of Hess's factual allegations. The parties should endeavor in good faith to apply the court's ruling to Hess's claims before the upcoming scheduling conference in order to streamline the case and to inform the scope of discovery.

Schlumberger's Motion to Dismiss (Docket Entry No. 29) is **GRANTED IN PART** and **DENIED IN PART**.

**SIGNED** at Houston, Texas, on this the 29th day of June, 2017.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE